*United States v. Cristobal*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of April, two thousand twenty-four.

PRESENT:

> DENNIS JACOBS,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                         No. 23-6107

PURIFICACION CRISTOBAL,

> *Defendant-Appellant.*\*

_____

_____

\* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

| | |
|---|---|
| **For Defendant-Appellant:** | JONATHAN A. ROSENBERG, Rosenberg Law Firm, Brooklyn, NY. |
| **For Appellee:** | DEREK WIKSTROM (Kyle A. Wirshba, Jun Xiang, David Abramowicz, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Katherine Polk Failla, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the January 25, 2023 judgment of the district court is **AFFIRMED**.

Purificacion Cristobal, a nurse practitioner and the sole medical professional at a clinic in the Bronx, appeals from a judgment of conviction following a jury trial in which she was found guilty of one count of conspiracy to distribute oxycodone, in violation of 21 U.S.C. § 846, and two counts of distributing and possessing with intent to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Following the jury's verdict, the district court denied Cristobal's motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 or, in the alternative, for a new trial pursuant to Federal

2

Rule of Criminal Procedure 33. The district court thereafter sentenced Cristobal to concurrent terms of eighty-four months' imprisonment on each of the three counts, to be followed by three years' supervised release. On appeal, Cristobal raises a litany of challenges to her conviction and sentence, which we address in turn. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## I. Sufficiency of the Evidence

Cristobal first argues that the district court should have granted her motion for a judgment of acquittal because the government failed to prove her subjective intent to distribute controlled substances without authorization, as is required by section 841. We disagree.

"We review preserved claims of insufficiency of the evidence *de novo*." *United States v. Capers*, 20 F.4th 105, 113 (2d Cir. 2021) (internal quotation marks omitted). But even under *de novo* review, "defendants face a heavy burden," *United States v. Ho*, 984 F.3d 191, 199 (2d Cir. 2020) (internal quotation marks omitted), because we must view the evidence "in the light most favorable to the government . . . credit[ing] every inference that the jury might have drawn in favor of the government." *United States v. Atilla*, 966 F.3d 118, 128 (2d Cir. 2020)

(internal quotation marks omitted). Ultimately, "[a] judgment of acquittal is warranted only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017) (internal quotation marks omitted).

Section 841 makes it unlawful for any person to "knowingly or intentionally" "distribute[] or dispense" a controlled substance "[e]xcept as authorized." 21 U.S.C. § 841(a). As provided by federal regulation, licensed practitioners – such as Cristobal – are authorized to issue prescriptions for controlled substances, but only if these prescriptions are issued "for a legitimate medical purpose" and "in the usual course of . . . professional practice." 21 C.F.R. § 1306.04(a). In *Ruan v. United States*, the Supreme Court held that, when a defendant is authorized to prescribe controlled substances, she may not be convicted under section 841 unless the government "prove[s] beyond a reasonable doubt that the defendant knew that . . . she was acting in an unauthorized manner." 597 U.S. 450, 454 (2022).

At the same time, and as Cristobal concedes, *Ruan* reaffirmed that the government can prove the requisite knowledge "through circumstantial

evidence."   *Id.* at 467; *see also United States v. Heras*, 609 F.3d 101, 106 (2d Cir. 2010) ("The law has long recognized that criminal intent may be proved by circumstantial evidence alone.").   Moreover, to prove subjective intent, the government can refer to, and compare a defendant's conduct against, "objective criteria such as 'legitimate medical purpose' and 'usual course' of 'professional practice.'"   *Ruan*, 597 U.S. at 467 (quoting 21 C.F.R. § 1306.04(a)).   "[T]he more unreasonable a defendant's asserted beliefs or misunderstandings are, especially as measured against objective criteria, the more likely the jury will find that the [g]overnment has carried its burden of proving knowledge."   *Id.* (alterations and internal quotation marks omitted).

Against this legal backdrop, Cristobal asserts that the government failed to carry its burden on section 841's intent element because the evidence demonstrated that she genuinely believed that she was issuing oxycodone prescriptions for legitimate medical reasons in the usual course of her professional practice.   But Cristobal made these same arguments to the jury, which clearly rejected them.   *See United States v. Clarke*, 979 F.3d 82, 91 (2d Cir. 2020).   We must "defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be

5

drawn from the evidence." *United States v. Landesman*, 17 F.4th 298, 320 (2d Cir. 2021) (internal quotation marks omitted).

At trial, the jury heard ample evidence from which it reasonably could have concluded that Cristobal knew she was prescribing oxycodone without any medical purpose and outside the course of professional practice. For example, multiple witnesses testified to telling Cristobal that her patients were selling or abusing the drugs she prescribed. Christian Ohaeri, a cooperating coconspirator and pharmacist who often filled prescriptions written by Cristobal, testified to warning Cristobal in October 2019 that the majority of her patients were selling the drugs she was prescribing. Destiny White and Daniella LoCicero, whom Cristobal hired as receptionists after first treating them as patients, likewise testified that the clinic was regularly filled with visibly high patients waiting to receive their prescriptions. Indeed, White testified that she repeatedly informed Cristobal that these waiting patients appeared to be high; she also pressed Cristobal to set up a drug testing program to confirm that oxycodone patients were not selling their prescribed drugs or taking unprescribed narcotics. Despite these warnings, the evidence reflected that Cristobal continued in her prescribing practices.

The government also introduced evidence that Cristobal dramatically deviated from the ordinary practices of other medical providers, offering circumstantial support of her intent to act without authorization. *See Ruan*, 597 U.S. at 467. This evidence reflected that, among other things, Cristobal allowed her patients to choose between narcotics according to their preference and regularly issued prescriptions without conducting physical examinations (and, in fact, lacked the medical equipment necessary to perform them). In addition, Cristobal routinely prescribed a combination of oxycodone, Xanax, and Adderall – a rarely prescribed trifecta of drugs that each treat different conditions and are dangerous to take together, but when used in combination, produce an intense high and, as a result, have high combined street values. Expert testimony established that these practices represented deviations from the usual course of professional practice.

Other unusual circumstances that supported a finding of subjective intent included Cristobal's practice of charging clients, who often paid in cash, by the prescription; her withholding of prescriptions based on patients' inability to pay; and her instructions that patients avoid filling prescriptions at large pharmacies where oxycodone prescriptions were more likely to be closely scrutinized.

Cristobal also required her patients to sign forms in which they promised not to disclose any information about Cristobal to law enforcement and which warned that doing so "w[ould] be deemed and construed as entrapment."  Suppl. App'x at 91–92.

Based on this considerable evidence, there is no question that a reasonable jury could have found beyond a reasonable doubt that Cristobal knew that she was unlawfully prescribing oxycodone.  *See United States v. Moore*, 423 U.S. 122, 142–43 (1975) (affirming sufficiency of evidence where the defendant gave patients "inadequate physical examinations or none at all," "ignored the results of the tests he did make," "took no precautions against . . . misuse and diversion," "did not regulate the dosage at all, prescribing as much and as frequently as the patient demanded," and charged by the "number of tablets desired" instead of "for medical services rendered"); *see also United States v. Maye*, 649 F. App'x 15, 16 (2d Cir. 2016) (affirming sufficiency of evidence based on "ample circumstantial evidence," including expert testimony about the "usual course of medical practice" and evidence that defendant failed to conduct patient examinations or obtain medical records).

## II.     Expert Testimony

Cristobal also contends that the district court erred by permitting the government's expert witness, Dr. Christopher Gharibo, to offer legal conclusions regarding the standards of care that applied to doctors prescribing controlled substances in New York.   We review a district court's decision to admit evidence, including expert testimony, for abuse of discretion.[1]   *United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015).   A district court abuses its discretion when its decision "rests on an error of law" or "clearly erroneous factual finding," or when the decision "cannot be located within the range of permissible decisions."   *United States v. Kaplan*, 490 F.3d 110, 118 (2d Cir. 2007) (internal quotation marks omitted).

We cannot agree that Dr. Ghabiro provided an impermissible legal conclusion when he testified that regulations in New York state require practitioners to conduct physical examinations before prescribing oxycodone. While Cristobal is correct that "[a]s a general rule," "an expert's testimony on issues of law is inadmiss[i]ble," we have allowed experts to testify on relevant regulations and industry standards as a basis to evaluate a defendant's conduct and intent.   *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *see also*

---

[1] For the purposes of this order, we assume – without deciding – that Cristobal's counsel lodged a timely objection at trial to the admission of this expert testimony.

9

*United States v. McElroy*, 910 F.2d 1016, 1023–24 (2d Cir. 1990).   And as *Ruan* makes

clear, evidence as to the "'usual course' of 'professional practice'" – when

considered in conjunction with the defendant's conduct – is relevant to the jury's

evaluation of the defendant's subjective intent.   *See Ruan*, 597 U.S. at 467.

Here, Dr. Gharibo testified that practitioners acting in the usual course of

professional practice conduct physical examinations before prescribing

oxycodone, and cited a New York state regulatory requirement.   In doing so, Dr.

Gharibo did not "suggest to the jury that it could find [Cristobal] guilty simply by

reason of [her] violation of the regulation," *McElroy*, 910 F.2d at 1023, nor did he

express any opinion as to Cristobal's own state of mind, *see United States v.*

*DiDomenico*, 985 F.2d 1159, 1164 (2d Cir. 1993).   Accordingly, we cannot say that

the district court abused its discretion in allowing this evidence.[2]

## III.   Jury Instructions

Next, Cristobal contends that the district court erroneously instructed the

jury to apply an objective, rather than subjective, standard of intent in violation of

---

[2] Cristobal asserts, on reply, that Dr. Gharibo was not qualified as an expert to offer testimony on the "New York regulatory requirements governing psychiatric practitioners" like herself.   Reply Br. at 1–2.   Because she did not make this argument in her principal brief, we deem it forfeited and do not address it here.   *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an appellant's opening brief are [forfeited] even if the appellant pursued those arguments in the district court or raised them in a reply.").

*Ruan*. Although Cristobal proposed her own jury charge on the requisite intent, she did not object to the district court's proposed instruction at the charge conference. Accordingly, we review this challenge for plain error. *See United States v. Crowley*, 318 F.3d 401, 412–14 (2d Cir. 2003). To prevail on plain-error review, an appellant must demonstrate that the error "is clear or obvious," "affected the appellant's substantial rights," and "seriously affects the fairness, integrity[,] or public reputation of judicial proceedings." *United States v. McCrimon*, 788 F.3d 75, 78 (2d Cir. 2015) (internal quotation marks omitted).

In charging the jury on the element of intent, the district court instructed that the government must prove that Cristobal "distributed or dispensed, or caused to be distributed or dispensed, oxycodone *knowing or intending* that the prescription was not issued for a legitimate medical purpose by an individual practitioner acting in the usual course of her professional practice." Suppl. App'x at 224 (emphasis added). The district court went on to define the terms "legitimate medical purpose" and "usual course of professional practice" to mean "acting in accordance with a standard of medical practice generally recognized and accepted in the State of New York." *Id.*

11

Contrary to Cristobal's assertions, this instruction comports with *Ruan*'s requirements. As noted above, a practitioner violates section 841 when she knowingly issues prescriptions in an unauthorized manner. And, as the *Ruan* Court recognized, the scope of a practitioner's prescribing authority is defined by federal regulation with "reference to objective criteria such as 'legitimate medical purpose' and 'usual course' of 'professional practice.'" 597 U.S. at 467 (quoting 21 C.F.R. § 1306.04(a)). We find no error, let alone plain error, in the district court's instructions discussing these objective criteria by reference to the medical practice standards of New York, the state in which Cristobal was licensed to practice.

More fundamentally, the district court did not incorrectly transform the subjective intent standard into an objective one. To the contrary, the district court repeatedly told the jury that the government had to prove not just that Cristobal acted without a legitimate medical purpose, but that she knew she was doing so. *See* Suppl. App'x at 220–27; *Ruan*, 597 U.S. at 457–61; *see also United States v. Al Kassar*, 660 F.3d 108, 127 (2d Cir. 2011) ("[W]e examine not only the specific language that the defendant challenges but also the instructions as a whole to see if the entire charge delivered a correct interpretation of the law." (internal

quotation marks omitted)). Because the district court correctly instructed the jury that it must find Cristobal's subjective consciousness of guilt in order to convict, her challenge to the jury instruction fails.

## IV. *Brady* Violations

Cristobal also asserts that a new trial is warranted because the government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), in two distinct ways. First, she contends that the government did not timely disclose information that could have been used to impeach Ohaeri — namely, his guilty plea to fraud involving the writing of fake prescriptions in Cristobal's name and a packet of information containing all prescriptions that he wrote in her name. Second, Cristobal argues that the government waited until mid-trial to disclose that the hard-copy patient files seized from Cristobal's clinic had been incompletely scanned, so that the electronic productions of those files previously made by the government did not accurately reflect their full contents. After discovering the scanning error mid-trial, the government reviewed the hard-copy files and promptly produced electronic versions of 143 additional pages, taken from 95 of Cristobal's 612 patient files, which had not previously been digitized or shared electronically with defense counsel.

To establish a *Brady* violation, "a defendant must show that: (1) the [g]overnment, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001); *see id.* at 135 (explaining that "favorable evidence" refers to both exculpatory and impeachment evidence). Because Cristobal raised these claims in her motion for a new trial under Rule 33, we review the district court's denial of that motion for abuse of discretion. *See United States v. Hunter*, 32 F.4th 22, 30 (2d Cir. 2022).

As to her first *Brady* claim, Cristobal has failed to show that the government suppressed impeachment material relating to Ohaeri. For starters, the record reflects that materials regarding Ohaeri's cooperation and guilty plea were disclosed in real time as they were generated or shortly thereafter. Moreover, as the government explains (and Cristobal does not dispute), the packet of information that Cristobal describes consisted of additional information regarding Ohaeri's prescription-filling history that defense counsel requested after the start of trial, which the government did not possess at the time but obtained from Ohaeri's counsel and immediately disclosed. The government had no obligation to discover and collect materials that it did not possess. *See United States v.*

14

*Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (limiting *Brady* to evidence "that is known to the prosecutor"); *see also United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir. 1980) ("Clearly the government cannot be required to produce that which it does not control and never possessed or inspected." (internal quotation marks omitted)). In any case, even assuming that these materials were suppressed, Cristobal does not meaningfully explain how they were favorable to her, or how any belated disclosure of the materials resulted in prejudice. *See Coppa*, 267 F.3d at 140; *see also id.* at 142 ("[W]e have never interpreted due process of law as requiring more than that *Brady* material must be disclosed in time for its effective use at trial.").

Cristobal's second *Brady* claim – pertaining to the improperly scanned patient files – is also unavailing. As Cristobal acknowledged and as the district court found, the physical files underlying this *Brady* claim were available for defense counsel's review for more than a year prior to the start of trial. And again, Cristobal does not explain how these files were favorable to her case. She does not identify any pages, individually or in the aggregate, that she would have used at trial, nor does she assert that the government relied on the inclusion or omission of these pages to her detriment. *See United States v. Montague*, 67 F.4th

520, 538–39 (2d Cir. 2023) (rejecting *Brady* claim where defendant "d[id] not show that the record was favorable to him because it was exculpatory or impeaching" (alterations and internal quotation marks omitted)).   Moreover, Cristobal fails to meaningfully articulate how the belated disclosure of these pages gives rise to a "reasonable probability" that the outcome of the case was affected.   *See Coppa*, 267 F.3d at 135, 143.   She omits mention of the steps taken during trial to mitigate any prejudice from the mid-trial disclosure; the government, for example, refrained from using any of the previously unscanned documents in its case-in-chief, unless such inclusion would be favorable to Cristobal.

Accordingly, the district court did not abuse its discretion in determining that the government's mid-trial disclosure did not warrant a new trial in this case.

## V.     Drug Quantity Calculation

Finally, Cristobal argues that the district court impermissibly speculated as to the total number of her unlawful oxycodone prescriptions when it calculated her base offense level under the Sentencing Guidelines.   We review the procedural reasonableness of a sentence "under a deferential abuse-of-discretion standard," *United States v. Yilmaz*, 910 F.3d 686, 688 (2d Cir. 2018), and have held that a "district court errs procedurally when it fails to calculate (or improperly

16

calculates) the Sentencing Guidelines range," *United States v. Alvarado*, 720 F.3d 153, 157 (2d Cir. 2013) (internal quotation marks omitted). At sentencing, the government bears the burden of proving drug quantity by a preponderance of the evidence, *see United States v. Colon*, 961 F.2d 41, 43 (2d Cir. 1992), and we review the district court's drug-quantity calculation for clear error, *see United States v. Jones*, 531 F.3d 163, 176 (2d Cir. 2008).

Cristobal contends that the district court improperly assumed, based on her convictions for unlawful distribution of oxycodone on two occasions, that some or all of the prescriptions she issued in 2019 and 2020 were unlawful. But in fact, the district court took the opposite approach. In reaching its drug quantity calculation, the district court examined "specific evidence" introduced at trial, including "drug records" in the form of prescription data and "live testimony" from numerous coconspirators about Cristobal's prescribing practices. *See United States v. Shonubi*, 103 F.3d 1085, 1089–92 (2d Cir. 1997); *see also United States v. Blount*, 291 F.3d 201, 215 (2d Cir. 2002) ("In making [a drug quantity] estimate, the court has broad discretion to consider all relevant information."). For example, the district court considered that approximately half of Cristobal's patients who received oxycodone prescriptions had no MRIs or other clinical documentation to

substantiate their prescriptions, and that the percentage of Cristobal's oxycodone prescriptions significantly increased during the relevant period, while prescriptions for controlled substances outside of the oxycodone-Xanax-Adderall combination significantly decreased.

In the end, the district court adopted a conservative approach and found only one third of Cristobal's prescriptions to be unlawful, despite expressly recognizing that the evidence supported such a finding as to *all* prescriptions identified by the government. Based on the record, we cannot conclude that the district court's calculation was clearly erroneous.

\* \* \*

We have considered Cristobal's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court