**UNITED STATES of America,**
**Plaintiff,**

v.

**Salvatore APARO, et al., Defendants.**

**No. 01–CR–416 (S–6)(ILG).**

United States District Court,
E.D. New York.

June 17, 2002.

David P. Grossman, Esq., Ronkonkoma, NY, for David P. Grossman.

Michael Washor, Esq., New York, NY, for Frank Schwamborn.

Ronald G. Russo, Esq., Herzfeld & Rubin, New York, NY, for Robert Santoro.

James R. Froccaro, Esq., Port Washington, NY, for Robert DeBello.

Gary Farrell, Esq., Brooklyn, NY, for Frank DeMeo.

James L. Koenig, Esq., Pollard & Koenig, Brooklyn, NY, for Philip Desena.

Samuel Gregory, Esq., Lazzaro Gregory & Hatzipetros, Brooklyn, NY, for Ciro Galeno.

Michael Marinaccio, Esq., Culleton Marinaccio & Foglia, White Plains, NY, for Ismet Kukic.

Paul Weinstein, Esq., Paul Schoeman, Esq., Daniel Dorsky, Esq., Assistant U.S. Attorneys, for U.S.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

Nine defendants of the forty who were originally indicted have moved this Court for an order which, if issued, would grant each the specific relief they seek. Some of those motions can readily be addressed.

### Bench Trial

■ The defendant, Grossman, has moved to be tried by the Court without a jury. Rule 23(a) of the Federal Rules of Criminal Procedure provides that a defendant may waive a jury trial in writing with the approval of the Court and the consent of the government. The government has refused consent and his motion must, therefore, be denied.

### Audibility Hearing

The defendant, Schwamborn, has moved for a hearing to determine the level of audibility of audio tapes numbered 96 and 99. His motion is granted and those tapes will be heard at a time convenient to the parties as they may request. *See United States v. Bryant,* 480 F.2d 785, 789 (2d Cir.1973).

### Dismissal of Count 27 as Duplicitous

■ Count 27 charges the defendant Schwamborn and others with conspiring "to conduct financial transactions . . . that involve the proceeds of . . . bribery, mail fraud, wire fraud and insurance fraud" knowing that the proceeds from those transactions were derived from unlawful activity the continuation of which they intended to promote and knowing that the transactions were designed to conceal the source and control of those proceeds and to avoid a transaction reporting requirement in violation of 18 U.S.C. § 1956(a)(1).

Schwamborn contends that this charge is duplicitous because it accuses him of separate conspiracies, viz; to promote unlawful activity; to conceal the proceeds of such activity and to avoid a transaction reporting requirement. He moves to dismiss it for that reason. He is mistaken. The crime with which he is charged is the conspiracy to launder the proceeds of unlawful activity and that is one crime. The Supreme Court said it succinctly in *Braverman v. United States,* viz; "whether the object of a single agreement is to commit one or many crimes, it is in either case the agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one. The allegation in a single count of a conspiracy to commit several crimes is not duplicitous,

for 'The conspiracy is the crime and that is one, however diverse its objects.'" 317 U.S. 49, 53–54, 63 S.Ct. 99, 87 L.Ed. 23 (1942) (citing *Frohwerk v. United States,* 249 U.S. 204, 210, 39 S.Ct. 249, 63 L.Ed. 561 (1919)); *see also United States v. Murray,* 618 F.2d 892, 896 (2d Cir.1980). The vice of a duplicitous charge so clearly explained in *Murray* is not inherent in Count 27, and Schwamborn's motion aimed at it is denied.

### Severance

Schwamborn, Santoro, Galeno, DeBello, Grossman, Weider and Kukic, move to have the counts of the indictment in which they are named, severed from the rest for reasons which are peculiar to some and common to others as will be now discussed.

██ Santoro and DeBello move for severance in general terms alleging, in essence, that harnessing them together with all the others for trial will be prejudicial to them.

Rules 8(b) and 14 of the Federal Rules of Criminal Procedure mark the points at which a consideration of a severance motion begins. Rule 8(b) provides:

> Two or more defendants may be charged in the same indictment ... if they are alleged to have participated in the same act or transaction or series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately....

Rule 14 provides, in relevant part:

> If it appears that a defendant ... is prejudiced by a joinder of offenses or of defendants in an indictment ... for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

*Zafiro v. United States,* 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993),

teaches that there is a preference in the federal courts for joint trials of defendants who have been indicted together because joint trials promote efficiency and avoid the inequity of inconsistent verdicts. That preference, said the Court, is not lost *per se* because defenses may be or are mutually antagonistic or because defendants believe they may have a better chance of acquittal if they were tried separately. The Court also recognized, however, that where the case is complex and the defendants "have markedly different degrees of culpability, [the] risk of prejudice is heightened." *Id.* at 539, 113 S.Ct. 933. This last recognition by the Court is particularly pertinent here. Thirty-one defendants are charged in a forty-four count indictment alleging extortionate extensions of credit; collecting extensions of credit by extortionate means; possession of a firearm by a convicted felon; disposing of a firearm to a convicted felon; false statements to law enforcement officers; mail fraud; wire fraud; perjury; interference with commerce by threats or violence; interstate transportation in aid of racketeering; illegal gambling; money laundering; violent crimes in aid of racketeering; racketeering; transportation of stolen goods; conspiracy to distribute marijuana; possession of an unregistered firearm; labor bribery and conspiracies to commit a number of the above-listed substantive crimes. Some of the defendants are charged with only one of those crimes; some with two and some with as many as twenty-six.

The obvious complexity of the case and the widely disparate degrees of culpability with which they are charged dictates the necessity for severing the defendants in relation to the crimes with which they are charged in a coherent manner which would minimize the risk of prejudice to them. In its Memorandum of Law in Opposition to this aspect of the motion, the government has proposed a severance which would ad-

dress considerations of both coherence and prejudice. (Govt. Mem. at 64–65.) Twenty-two of the originally named thirty-one defendants have pleaded guilty.

The government's proposal would sever the remaining nine defendants into the following groups: Group one would include Grossman, Santoro and Schwamborn. Each is charged with mail fraud, wire fraud, conspiracy to commit mail and wire fraud and money laundering conspiracy. Santoro and Schwamborn are also charged with RICO, RICO conspiracy and interstate transportation of the same stolen property. Santoro alone is charged, in addition, with perjury and false statements which arise out of the other crimes. The predicate acts of racketeering are the mail fraud, wire fraud, money laundering and interstate transportation of the stolen property. There is an internal coherence of this grouping, and excepting for discussion hereafter of a discrete issue pertaining to Grossman and Schwamborn, the government's suggested severance is adopted.

The second grouping suggested for severance would include the defendants DeBello, DeMeo, Desena and Galeno. DeBello and Desena are charged with conspiracy to commit a crime of violence in aid of racketeering. DeMeo and Galeno are charged with racketeering conspiracy to collect usurious loans; conspiracy to make extortionate extensions of credit and conspiracy to use extortionate means to collect extensions of credit. DeMeo is also charged with conspiracy to commit a crime of violence in aid of racketeering; using and carrying a firearm in connection with that crime of violence; gambling; gambling conspiracy; RICO, the predicate racketeering acts charged being gambling and the conspiracies to collect extensions of credit and a RICO conspiracy. Here, too, there is an internal coherence of the grouping, and

the government's suggested severance of these defendants is adopted.

The third grouping suggested by the government for severance are the defendants Kukic and Weider, who are charged with conspiracy to commit labor bribery. This severance is plainly appropriate and is granted.

A chart of each of the three groups is attached as an appendix.

■ I turn now to the severance issue previously alluded to concerning Grossman and Schwamborn. Grossman was Schwamborn's attorney during the period when the charges of mail fraud, wire fraud, conspiracy to commit both mail fraud and wire fraud and money laundering conspiracy in which he and Schwamborn are named were committed. That attorney-client relationship, he contends, could prevent him from testifying, which he intends to do, about exculpatory information and prevent him from effectively cross-examining witnesses with the use of information revealed to him in his capacity as an attorney. Schwamborn urges the necessity of being severed from Grossman for the reason that he intends to call Grossman as a witness and Grossman has indicted that he would testify at a separate trial of both, but not at a joint trial. (Schwamborn Memo at 12.)

The propriety of a severance based upon an asserted need to elicit a co-defendant's testimony has been addressed by virtually every circuit. In this circuit, the factors to be proffered by the movant for the Court's consideration were stated in the oft-cited case of *United States v. Finkelstein*, 526 F.2d 517, 523–24 (2d Cir.1975), to be: (1) the sufficiency of a showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege; (2) the degree to which exculpatory testimony would be cumulative; (3) a consideration of judicial economy separate trials

would implicate; and (4) the likelihood that the testimony would be subject to substantial damaging impeachment. *Accord United States v. Wilson,* 11 F.3d 346, 354 (2d Cir.1993). These factors are not exhaustive. Other circuits have required the movant to show, for example, a bona fide need for the testimony, the substance of the testimony, and its exculpatory nature and effect. *See, e.g., United States v. Ford,* 870 F.2d 729, 731 (D.C.Cir.1989).

In his Notice of Motion, Grossman asserts that he "may not be able to testify completely in his own behalf" given the attorney-client relationship; that "he may not be able to cross examine witnesses offered by a co-defendant because" information useful for that purpose may be privileged. (Grossman Notice of Mot. at 3.) In his Memorandum of Law, at page 6, he asserts that obedience to the demands of confidentiality "could prevent [him] from testifying about potentially exculpatory information."

In Schwamborn's Memorandum of Law, he asserts that he intends to call Grossman as a witness, but Grossman indicated he will only testify on his behalf if he were granted a separate trial. Schwamborn also asserts that as regards Count Thirty–Six only, the charge of interstate transportation of a stolen check, he would have elicited exculpatory information to the effect that "upon learning that there was a problem with the . . . check, [he] instructed Grossman to pay back the party on the check with Schwamborn's own funds, and that Grossman did, in fact, write a check from his escrow account to cover the value of the . . . check." (Schwamborn Mem. at 12.)

Neither Grossman nor Schwamborn state with any certainty that either would testify if called, nor do either state with certainty that the other would waive his Fifth Amendment privilege if severance were granted. Judge Moore's astute observation in *Finkelstein* is instructive, if not dispositive, in this regard. He wrote: "Given the fact that none of the co-defendant's pleaded guilty or evidenced any intention of doing so, it is unrealistic to think that a co-defendant 'would be any more willing to waive his constitutional privilege against self-incrimination when called as a witness at a separate trial than he would be willing to insist upon his privilege as a defendant not to take the stand.'" 526 F.2d at 524 (citing *Gorin v. United States,* 313 F.2d 641, 646 (1st Cir.1963)).

In addition, assuming that Schwamborn were to call Grossman as his witness, he would, by doing so, waive the attorney-client privilege and Grossman would then be freed of the restraints under which he would otherwise have to abide and upon which he bases his need for a severance. This assumes, too, that Grossman would be willing to waive his Fifth Amendment privilege as to which there has been no showing.

There having been no showing as to what the exculpatory testimony would have been were it elicited, no assessment can be made as to the degree to which it would be cumulative and the court could only speculate that, given the likelihood that either Grossman or Schwamborn would testify, the extent to which each of them would be subject to damaging impeachment. *United States v. Gardell,* No. S400CR.632(WHP), 2001 WL 1135948, at *9 (S.D.N.Y. Sept.25, 2001) ("a factual showing that demonstrates with a modest degree of definitiveness the exculpatory nature and effect of the co-defendant's testimony") (citations omitted); *see also United States v. Butler,* 611 F.2d 1066, 1071 (6th Cir.1980); *United States v. Shuford,* 454 F.2d 772, 775–76 (4th Cir.1971).

The foregoing would suffice to deny their motions for a severance, but I would add two other reasons for doing so. First,

the presumption in favor of a joint trial espoused by *Zafiro* is especially compelling where the crimes charged involve a common scheme. *United States v. Girard,* 601 F.2d 69, 72 (2d Cir.1979). The defendants here are charged in the same two conspiracies and the same two substantive offenses and the presumption in favor of a joint trial is, therefore, compelling. *Id.* at 72. In addition, there is a strong public interest in joint trials where, as in this case, the defendants are both charged in the same conspiracy. *United States v. Pirro,* 76 F.Supp.2d 478, 483 (S.D.N.Y. 1999) (collecting numerous cases indicating that there is a strong public interest in joint trials where, as here, the defendants are both charged in the same conspiracy).

### Disclosure of Rule 404(b) Evidence

The defendants DeMeo, Galeno, Kukic, Santoro and Weider move for an order that would direct the government to disclose the evidence it will seek to introduce at trial pursuant to Federal Rule of Evidence 404(b). That Rule provides that "upon request by the accused, the prosecution ... shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown of" evidence of other crimes or bad acts. Their motion is hereby granted insofar as it directs the government to provide the defendants with notice of the 404(b) evidence it proposes to offer at trial two weeks prior thereto.

### Disclosure of Rule 403, 608 and 609 Evidence

The defendants DeMeo, Desena and Galeno move the Court for an order that would direct the government to disclose pretrial evidence it proposes to offer at trial pursuant to Rules 403, 608 and 609 Federal Rules of Evidence. Rule 403 in essence, instructs the court to balance the relevance of evidence against its potential for prejudice, confusion, undue delay.

That Rule doesn't lend itself to the issuance of a pretrial order. Rule 608 authorizes the admissibility of evidence of a witness' specific conduct, other than the commission of crime, if probative of the credibility of the witness. Rule 609 authorizes the admissibility of certain prior convictions of a witness for the purpose of attacking his credibility. The issue of the timing of the disclosure of impeachment and exculpatory evidence required by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); and *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), was recently considered at length in *In re United States v. Coppa,* 267 F.3d 132 (2d Cir.2001). The Court in *Coppa* reversed this Court which, in *United States v. Shvarts,* 90 F.Supp.2d 219, 224–29 (E.D.N.Y.2000), directed the government to provide the defendants with all exculpatory and impeachment material immediately upon request. The Circuit Court concluded its decision by remanding the case to this Court to determine what disclosure it deems appropriate as a matter of case management. *Coppa.* 267 F.3d at 146. Because all the defendants in the *Coppa* case pleaded, the Court had no occasion to make that determination, but will do so now. Given the complexity of this case and the crimes with which the defendants are charged, the government is directed to provide the defendants with all exculpatory and impeachment evidence it possesses no later than four weeks prior to trial, which should enable the defendants sufficient time to make such motions *in limine* as they may deem appropriate; sufficient time to permit the government to respond to such motions, if made, and the Court to decide them in the interest of prudent case management. The govern-

ment may apply for an order shortening that time upon a showing, with specificity, that disclosure of such evidence could endanger a potential government witness.

### Disclosure of Confidential Informants

The defendants DeMeo, Galeno and Desena move this Court for an order that would direct the government to disclose the identity of confidential informants and make them available to be interviewed by their lawyers.

The case almost always cited at the outset of a motion for the disclosure of the identity of a confidential informant is *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The purpose of shielding the government from making that disclosure "is the furtherance and protection of the public interest in effective law enforcement. [It] recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* at 59, 77 S.Ct. 623. The Court articulated several limitations upon the principle, one of which is dictated by the demands of fairness. Where, for example, "the disclosure of an informer's identity, ... is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60–61, 77 S.Ct. 623.

In the years that have intervened, considerable gloss has been applied to *Roviaro*. For example, the informant's identity must be disclosed where he is a material witness. *Id.* at 64–65, 77 S.Ct. 623 (disclosure required where the informant and the defendant were the only parties in the transaction and the informant was the only person who could amplify or contradict the government witness); *United States v. Russotti*, 746 F.2d 945, 949–50 (2d Cir.1984) (informant's identity need not

be disclosed unless it is "essential to the defense ... and whose testimony would be significant in determining guilt or innocence"). The defendants bear the burden of showing that the informant's testimony is material to their defense and they have failed to make that showing. *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir.1988); *United States v. Jimenez*, 824 F.Supp. 351, 364 (S.D.N.Y.1993). The defendant's request for a witness list is denied.

### Discovery

The defendants DeMeo, Desena, Galeno and Grossman assert their right to discovery without indicating, as far as the Court can discern, what it is they seek to discover. The government has advised that it has provided them with a mound of material that would generally be regarded as discovery. *(See* Gov. Mem. at 78–79.) And having no indication of the specificity of their request, it is denied.

### Bill of Particulars

The defendants Schwamborn, Grossman, Weider and Kukic move the Court for an order that would direct the government to provide a bill of particulars of what can only be described as an undifferentiated boiler plate list of items which they claim they need if they are to understand the nature and scope of the charges against them.

In *United States v. Crozzoli*, 698 F.Supp. 430, 435–36 (E.D.N.Y.1988), the Court wrote:

> Rule 7(f) ... permits a defendant to seek a bill of particulars to identify with specificity the nature of the charge pending against him so that he may prepare for trial, avoid surprise and be able to claim double jeopardy should he be prosecuted again for the same crime. The decision to grant or deny a request

for a bill of particulars rests within the sound discretion of the court. As a general rule if the information the defendant seeks is to be found in the indictment or in some acceptable alternative form, no bill of particulars is required.

■ The case law is legion in declaring that a bill of particulars is not a vehicle for obtaining the government's disclosure of its evidence or of the precise manner by which it intends to prove the crime charged was committed. A bill of particulars is not the tactical tool for restricting the government's evidence prior to trial or to serve the defendant's investigative function. A bill of particulars is not intended to provide the defendant with the names of unindicted co-conspirators.

Even a cursory reading of the indictment would compel the conclusion that it provides the defendants with sufficient precision of the crimes with which they are charged to permit them to prepare for trial and to raise the bar of double jeopardy should they be indicted once again. Surely that specificity together with the discovery already provided the defendants makes their claim of need for a bill of particulars singularly unpersuasive and it is denied.

### Suppressing of Santoro's Post–Arrest Statement

■ The statements Santoro seeks to suppress after his arrest and while being processed by the FBI in its New York office were, in essence, that (1) he remembered traveling to New York on a Thursday night to clear his name because the word on the street was that he was cooperating with law enforcement; (2) he is not involved with organized crime and, (3) he used bad judgment in doing business with individuals such as Schwamborn.

In the Memorandum of Law in support of this motion (Santoro Mem. at 13–14), the defendant recites that the government

was informed by a letter from his counsel dated March 14, 2001, that he was represented by counsel in connection with the then pending charge and on the ongoing investigation. He then recites the familiar principles which, absent a valid waiver, entitles defendant to the presence of counsel during custodial interrogation and which require interrogation to cease once the right to counsel has been invoked. Although not explicitly asserted, the recitation of those principles clearly suggest their application to Santoro's post-arrest statements and are deemed to be the basis for his motion.

The government denies the application of those principles and in support of its position disputes the facts assumed by Santoro as justifying their application. Santoro was arrested in this case on April 25, 2001. Prior thereto, he had been arrested on February 20, 2001, on a complaint alleging an entirely unrelated crime. That complaint was dismissed without prejudice upon the government's motion on March 21, 2001. Thus, when Santoro was arrested in this case, there were no adversary judicial proceedings pending against him and the Sixth Amendment right to counsel had not attached. *See Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (the right to counsel attaches after judicial proceedings have been instituted whether by formal charge, preliminary hearing, indictment, information or arraignment); *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). Counsel's letter of March 14th advising of his appearance on the pending charge could only have been related to the charge which was in fact then pending and subsequently dismissed 7 days later on March 21st.

*United States v. Mapp,* 170 F.3d 328, 334 (2d Cir.1999), is precisely applicable and dispositive. The defendant there was

convicted in 1991 of state gun charges and imprisoned. Shortly thereafter, he was also charged by the state with murder, a charge that was dismissed at the state's request in 1995. While still imprisoned, the defendant made statements to a former accomplice on October 24, 1995. Thereafter, in April 1996, the defendant was indicted. He moved to suppress the statements claiming he was deprived of his Sixth Amendment right to counsel. In denying the motion, the Court held that the Sixth Amendment is offense specific and does not preclude questioning a person regarding other crimes to which that constitutional right had not yet attached. *See also United States v. Shea,* 211 F.3d 658, 667 (1st Cir.2000); *United States v. Roberts,* 869 F.2d 70, 73 (2d Cir.1989).

■ The defendant can derive no comfort from the March 14th, 2001 letter to the government by his lawyer advising that he represented Mr. Santoro on the then pending charge for essentially the same reason, namely that the right to counsel cannot be invoked prospectively in contemplation of future prosecutions because the right does not attach until a prosecution is commenced. *McNeil,* 501 U.S. at 175, 111 S.Ct. 2204 ("The Sixth Amendment ... is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced ...."); *United States v. Muick,* 167 F.3d 1162, 1165 (7th Cir.1999).

It is not clear whether Santoro is asserting a violation of his Fifth Amendment right to counsel during custodial interrogation. If he is, he has not submitted an affidavit alleging facts which would require the suppression of statements if those facts were proved at a hearing. *United States v. Gillette,* 383 F.2d 843 (2d Cir. 1967). For the reasons given, his motion to suppress his post-arrest statements is denied.

*Suppression of Wire Tap Evidence*

The defendants Schwamborn, Grossman, Santoro, DeMeo, Desena and Galeno move to suppress evidence obtained pursuant to 18 U.S.C. § 2518.

With two exceptions to be addressed hereafter, the motions are predicated upon the assertions that (1) the relevant affidavits submitted in support of requested orders are not sufficiently explicit in explaining why alternative techniques such as physical surveillance, undercover agents, grand jury investigations or searches and seizures will not succeed and (2) that the affidavits do not establish probable cause to warrant the belief that evidence will thus be obtained to establish that the named interceptees are committing the crimes which are enumerated.

The Court has carefully and conscientiously examined the extensive affidavits submitted by FBI Agent Michael Campi to the Eastern District on December 13th, 1999; to the Southern District on March 1st, 2000; the affidavit of FBI Agent Joy Adam to the Southern District of New York on April 4th, 2000; the affidavit of FBI Agent Eileen White in support of the issuance of a warrant for the arrest of Robert Santoro submitted to the Eastern District of New York on February 16, 2001, and the affidavit of FBI Agent Gary J. Pontecorvo to the District Court for New Jersey on May 5th, 1998, for the issuance of a warrant to search the premises of the City Check Cashing Corporation. Those affidavits were deemed sufficient by United States District Judges in the Eastern and Southern Districts of New York and the District of New Jersey to justify the issuance of the warrants and the orders applied for.

■ To the extent that the motions are predicated on the want of probable cause, they are denied. As regards the issue of probable cause, the governing principles

have been explicated in countless decisions. This Court had occasion to recite them in *United States v. Gotti,* 771 F.Supp. 535 (E.D.N.Y.1991), largely by quoting from *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). At the outset, it should be noted that this standard of probable cause is the same as the standard for a regular search warrant. *United States v. Fury,* 554 F.2d 522 (2d Cir.1977). Returning to *Illinois v. Gates,* the Court there taught that the issuing magistrate's task is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that evidence of a crime will be found ...." 462 U.S. at 238, 103 S.Ct. 2317. That Court also cautioned that "after-the-fact scrutiny by courts of an affidavit should not take the form of *de novo* review," and that the "Magistrate's determination of probable cause should be paid great deference by reviewing courts." *Id.* at 236, 103 S.Ct. 2317. That deference is particularly warranted here given that the wiretap orders were issued by three district court judges, namely Judges Sifton, Sand and Schwartz. The determination of the existence of probable cause by each of those judges was clearly correct and will not be disturbed.

▪ To the extent that their motions are based upon an assertion that normal investigative techniques would have sufficed to obtain the requisite evidence, the motions are denied.

In paragraphs 26–31 of his affidavit of December 13, 1999, in support of the application to the Eastern District for an order to intercept communications on the Schwamborn telephone, FBI Agent Michael Campi provided specific and credible reasons why alternative investigative techniques were not adequate to accomplish the goals of the investigation then underway. Those alternative investigative techniques which had until then been used included a cooperating witness, consensual recordings, a pen register and physical surveillance.

In paragraphs 56–65 of his affidavit of March 1st, 2000, in support of the application to the Southern District of New York for an order to intercept communications on the Aparo telephone, Agent Campi provided specific and credible reasons why the alternative investigative techniques discussed were not adequate to accomplish the goals of the investigation and in paragraphs 21–30 of the affidavit of FBI Agent Joy Adam, dated April 4th, 2000, in support of the application to the Southern District for an order to intercept the conversations of the moving defendants the inadequacy of alternative investigative techniques are sufficiently explained.

▪ 18 U.S.C. § 2518(1)(c) requires that an application for an order permitting wire communications to be intercepted include "a full and complete statement as to whether or not investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." It is not a requirement of that statute, however, that ordinary investigative techniques be exhausted before such interceptions may be authorized. *United States v. Martino,* 664 F.2d 860, 868 (2d Cir.1981). In *United States v. Fury,* 554 F.2d 522, 530 (2d Cir.), the Court wrote that "the purpose of these 'other investigative techniques' requirement is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques." *See also United States v. Lilla,* 699 F.2d 99, 102 (2d Cir.1983); *United States v. Pacheco,* 489 F.2d 554, 565 (5th Cir.1974). The showing

required by Section 2518(1)(c) is to be tested in a practical and common sense fashion. The function of the Court is to "decide if the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Torres*, 901 F.2d 205, 231 (2d Cir.1990). In this regard, the Court is mindful that the determination by the judges issuing the wiretap order is entitled to deference. *Martino*, 664 F.2d at 868.

Three district court judges were adequately informed by the affidavits of Special Agents Campi and Adam of the difficulties presented in the use of conventional techniques which, when examined and tested in a practical and commonsense way provided more than adequate assurance that the wiretaps were resorted to legitimately. The defendants' "Monday morning quarterbacking as to what investigative techniques the agents should have employed in addition to what they did employ is utterly unrealistic, if not naive." *United States v. Shipp*, 578 F.Supp. 980, 989 (S.D.N.Y.1984); *Accord Gotti*, 771 F.Supp. at 547.

The motion by defendant DeMeo to suppress the wiretap evidence on the ground that there was no probable cause to issue the orders authorizing the wiretaps on his telephone and the telephone of Vincent Aparo is denied as his motion to suppress on the ground that alternative investigative techniques were not used and would have sufficed. Even the most cursory reading of the affidavit of Special Agents Campi dated March 1, 2000, on the basis of which Judge Sand issued the authorizing order and the affidavit dated April 4, 2000, by Special Agent Adam on the basis of which Judge Sand authorized the extension of that order would dispel any doubt that Judge Sand had more than probable cause to issue them. Those affidavits are annexed as Exhibits A, D and E in a volume of exhibits supplementing the gov-

ernment's memorandum in opposition to these motions and are deemed incorporated here in lieu of unnecessarily lengthening this already lengthy Order. The Court will also refrain from recounting what are by now the all too familiar principles to be applied in determining the issue of probable cause and which have been alluded to above. A reference to *Gotti*, 771 F.Supp. at 540–42 will, hopefully, suffice.

 Two additional issues raised by Schwamborn remain to be addressed. First is his contention that the fruits of the wiretap on his telephone should be suppressed because he changed his telephone number during the course of that wiretap. An examination of the wiretap order of December 13, 1999, issued by Judge Sifton (Ex. A in supplemental Volume of Exhibits) provides that it extends to any telephone identified by electronic serial number (ESN) 25212591562, notwithstanding a change in the telephone number. In a letter dated December 17, 1999, to then-Chief Judge Sifton, Assistant U.S. Attorney Schoeman advised that Schwamborn's telephone number identified in the December 13th Order as (718) 344–6865 was changed to (516) 993–6280. Schwamborn makes no claim that the ESN number changed and, in fact, it did not, thus not affecting in any way the continued viability of the December 13th Order.

 Second, Schwamborn and Grossman contend that intercepted communications between them should be suppressed as being privileged communications between a client and his attorney which were not minimized and should have been. Grossman is an attorney.

This Court had occasion to consider a similar contention in *Gotti*, 771 F.Supp. at 542–45, and there wrote that:

> The law places the burden on the person claiming the attorney-client privilege to establish all of its essential elements

(citations omitted). Those elements are: (1) the client must seek legal advice; (2) the advice must be sought from an attorney acting in his professional capacity; (3) the communication between attorney and client must be for the purpose of seeking legal advice; and (4) the communication must be made in confidence.

Among the exceptions to the privilege the Court went on to discuss were communications which were not made for the purpose of obtaining legal advice; communications made for the purpose of committing a crime which can only be determined within the context in which the communication was made.

A parsing of Schwamborn's and Grossman's affidavits and memoranda of law with a view to discovering the proof which it is their burden to bear uncovers nothing.

There is no indication, nor even any basis for drawing an inference that Schwamborn was seeking legal advice from Grossman acting in his capacity as an attorney. On the contrary, the conclusion is inescapable that the intercepted communication was not for the purpose of obtaining legal advice. Rather, given the context in which the communications took place, the conclusion is also inescapable that it was for the purpose of committing a crime.

The arguments for suppression relating to the wiretap minimization requirements are plainly without merit.

For all the reasons advanced, the motions by Schwamborn, Grossman, Santoro, DeMeo, Desena and Galeno to suppress evidence obtained by means of intercepting electronic communications are denied.

SO ORDERED.

## APPENDIX A
### Proposed Trail Groupings

| Group One | Group Two | Group Three |
| --- | --- | --- |
| David Grossman | Robert DeBello | Ismet Kukic |
| Robert Santoro | Frank DeMeo | Abraham Weider |
| Frank Schwamborn | Philip Desena | |
| | Ciro Galeno | |

The charges applicable to each defendant in each group are as follows:

Group One

| Defendant | Charges |
| --- | --- |
| David Grossman | Count 24—Mail and Wire Fraud Conspiracy (Check Scheme I)<br>Count 25—Wire Fraud (Check Scheme I)<br>Count 26—Mail Fraud (Check Scheme I)<br>Count 27—Money Laundering Conspiracy (Check Scheme I) |
| Robert Santoro | Count 1—RICO<br>Count 2—RICO Conspiracy<br>Count 24—Mail and Wire Fraud Conspiracy (Check Scheme I)<br>Count 25—Wire Fraud (Check Scheme I)<br>Count 26—Mail Fraud (Check Scheme I)<br>Count 27—Money Laundering Conspiracy (Check Scheme I)<br>Count 36—ITSP (New York Life Check)<br>Count 43—False Statements<br>Count 44—Perjury |

Frank Schwamborn

Count 1—RICO
Count 2—RICO Conspiracy
Count 24—Mail and Wire Fraud Conspiracy (Check Scheme I)
Count 25—Wire Fraud (Check Scheme I)
Count 26—Mail Fraud (Check Scheme I)
Count 27—Money Laundering Conspiracy (Check Scheme I)
Count 36—ITSP (New York Life Check)

## Group Two

| Defendant | Charges |
|---|---|
| Robert DeBello | Count 41—Violence in Aid of Racketeering Conspiracy |
| Frank DeMeo | Count 1—RICO |
| | Count 2—RICO Conspiracy |
| | Count 6—Gambling |
| | Count 7—Gambling Conspiracy |
| | Count 38—RICO Conspiracy (Collection of an Unlawful Debt) |
| | Count 39—Extortionate Extensions of Credit Conspiracy |
| | Count 40—Extortionate Collections of Credit Conspiracy |
| | Count 41—Violence in Aid of Racketeering Conspiracy |
| | Count 42—Using and Carrying a Firearm in Connection with Count 41 |
| Philip Desena | Count 41—Violence in Aid of Racketeering Conspiracy |
| Ciro Galeno | Count 38—RICO Conspiracy (Collection of an Unlawful Debt) |
| | Count 39—Extortionate Extensions of Credit Conspiracy |
| | Count 40—Extortionate Collections of Credit Conspiracy |