**Rafael HERNANDEZ, Petitioner–Appellant,**

v.

**John BURGE, Superintendent, Auburn Correctional Facility, Respondent–Appellee.**

**Docket No. 04–5647.**

United States Court of Appeals, Second Circuit.

June 24, 2005.

---

Jonathan E. Pickhardt, Wachtell, Lipton, Rosen & Katz, (Richard M. Greenberg and Daniel A. Warshawsky, Office of the Appellate Defender, on the brief), New York, NY, for Petitioner–Appellant.

Alan Gadlin, Assistant District Attorney (Morrie I. Kleinbart, Assistant District Attorney, Robert M. Morgenthau, District Attorney, New York County, on the brief), New York, NY, for Respondent–Appellee, of counsel.

PRESENT: MINER, STRAUB, Circuit Judges, and KEENAN,* District Judge.

## SUMMARY ORDER

In a *habeas corpus* petition filed in the District Court, and on this appeal, Hernandez seeks *vacatur* of a judgment of conviction, entered upon a jury verdict, by the Supreme Court of New York, New York County, based on an alleged violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1973). The District Court declined to grant the writ and dismissed the petition. We affirm.

On February 16, 1995, Fabio Marcellino was killed. More than a year later, Petitioner–Defendant, Rafael Hernandez, was arrested and charged with Marcellino's murder. At trial, the prosecution's case against Hernandez consisted of the testimony of six witnesses. One of these witnesses, James Mitchell, was a drug dealer and friend of Marcellino. At trial Mitchell

---

* The Hon. John F. Keenan, United States District Judge, Southern District of New York,   sitting by designation.

testified as to Hernandez's motive for killing Marcellino, and that, on the day of the shooting, immediately after hearing shots, he saw Hernandez running with a gun from the place where Marcellino's body was found.

Eighteen months prior to trial, in connection with the investigation of Marcellino's murder, Detective Rosario, of the New York City Police Department, interviewed an individual named Ray Jerez who was, at the time, incarcerated. In that interview Jerez stated that, immediately after the shooting, Mitchell told him that the shooter was an individual named Nano. In connection with this statement, Jerez reviewed a book of mug shots and selected three photographs. Next to one of these photographs, Detective Rosario wrote "perp," next to another he wrote "looks like perp," and next to the third photograph he wrote "possibly hiding out at residence of Nelson." While the DD–5 report of this interview prepared by Detective Rosario was dated October 9, 1995, it was not turned over to defense counsel until April 9, 1997, the second day of trial, when defense counsel also received the photographs labeled "perp," and "possibly hiding out at residence of Nelson." While all of these materials were disclosed prior to James Mitchell testifying, defense counsel asserted a *Brady* violation based on late disclosure. The trial court denied this claim, stating that defense counsel ought to determine the contents of the material before declaring that they were exculpatory.

Despite the late disclosure, defense counsel referred to Jerez's statements during cross examination of Mitchell. However, counsel was unable to establish, during that cross examination, that Mitchell had spoken with Jerez on the day of the shooting or that Mitchell knew an individual named "Nano." During cross examination of other prosecution witnesses counsel did

establish the existence of "Nano" and "Nelson," and was also able to elicit testimony regarding the investigation of alternate perpetrators, including the search for a person matching Jerez's description of "Nano." Defense counsel did not, at any time during trial, seek a recess to conduct further investigation based on the DD–5 or the photographs.

On the last day of the government's case, Detective Rosario was made available to defense counsel and counsel learned that a photograph, labeled "looks like perp," had been destroyed. Defense counsel moved for dismissal based on the late disclosure and destruction of exculpatory evidence. The trial court denied the motion.

On April 14, 1997, the last day of trial, Jerez was made available to defense counsel, but counsel did not call him to the stand. Rather, in his closing argument, counsel stressed the relevance of Jerez's statements and suggested that the police had not investigated alternative perpetrators. On April 18, 1997, the jury found Hernandez guilty of second degree murder. On May 15, 1997, the defendant was sentenced to 25 years to life in prison.

Hernandez appealed to the New York Supreme Court, Appellate Division, First Department. The Appellate Division affirmed petitioner's judgment of conviction, finding that the evidence against Hernandez was "overwhelming." 738 N.Y.S.2d at 310. Hernandez sought leave to appeal to the New York Court of Appeals. That request was denied. Hernandez subsequently filed a petition for a writ of *habeas corpus* in the United States District Court for the Southern District of New York. The District Court denied the petition. We assert jurisdiction under 28 U.S.C. §§ 1291 and 2253 and affirm.

Because the Appellate Division addressed petitioner's *Brady* claim on direct

appeal, we review the state court's decision under the deferential standard of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), granting relief only if the state court's judgment: (1) was "contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court;" or (2) was "based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

██ We find no error in the Appellate Division's finding that the evidence against Hernandez was "overwhelming." With regard to the delay in the disclosure of the DD–5 report and the two photographs, we agree with the District Court that since defense counsel was able to make effective use of these materials, the delay did not cause material prejudice, such as would undermine confidence in the outcome of the trial. *See United States v. Coppa,* 267 F.3d 132, 142 (2d Cir.2001). With regard to the destroyed photograph, we hold that the Appellate Division unreasonably applied Supreme Court precedent to find that the photograph was not exculpatory. *See United States v. Ash,* 413 U.S. 300, 318–19, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973) ("Selection [by a witness] of the picture of a person other than the accused . . . will be useful to the defense in precisely the same manner that selection of a picture of the defendant would be useful to the prosecution."). However, we agree with the District Court that since the destruction was not shown to be purposeful, and the photograph, while potentially useful, was not materially exculpatory, there was no violation of due process. *See Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *Illinois v. Fisher,* 540 U.S. 544, 547–48, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004).

In affirming, we join the District Court in its opinion that the behavior of the prosecution in this case was disturbing. We share the District Court's concerns regarding the absence of *any* explanation for the delay in disclosure. Nevertheless, this improper conduct does not rise to the level of constitutional error warranting *habeas* relief because Hernandez has not shown a "reasonable probability" that, had the reports and photographs been timely disclosed, the outcome at trial would have been different. *See United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

We have reviewed petitioner's remaining arguments on appeal and find each of them to be without merit. For the foregoing reasons the judgment of the District Court is AFFIRMED.