**UNITED STATES of America,**

v.

**Arthur BIELLI, Defendant.**

**No. 08–CR–381 (ADS).**

United States District Court, E.D. New York.

March 26, 2010.

---

Benton J. Campbell, United States Attorney, Eastern District of New York, by Carrie Capwell, Assistant United States Attorney, Central Islip, NY.

James Neville, Esq., Port Washington, NY, Attorney for the Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Presently before the Court are various pre-trial motions by Defendant Arthur Bielli ("Bielli"). Bielli has moved for an order: (1) dismissing Counts 9, 11, 12, 14 and 15 of the Indictment pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (2) directing the Government to provide a bill of particulars detailing information pertaining to certain of his alleged victims; and (3) directing the Government to provide Fed.R.Crim.P. 16 discovery material, including information relating to government witnesses and confidential informants. For the reasons that follow, Bielli's motions are denied.

## I. BACKGROUND

On June 5, 2008, an indictment issued charging Bielli with 17 counts of mail fraud, in violation of 18 U.S.C. § 1341, and 10 counts of wire fraud, in violation of 18 U.S.C. § 1343. These charges stem from Bielli's alleged scheme to fraudulently obtain money from his clients, insurance providers, and a financing company with which his brokerage firms conducted business.

### A. Bielli's Alleged Scheme

Bielli, an insurance broker, operated Global Insurance Brokerage, Inc. ("Global") and Cross Country Brokerage, Inc. ("Cross Country"). Bielli's clients were mainly towing companies or trucking companies that required insurance coverage for their vehicles. Bielli provided the conventional services of a broker by obtaining insurance coverage for his clients in exchange for a fee. Clients were instructed to pay their insurance premiums directly to Global or Cross Country with the expectation that Bielli would then forward these premiums to insurance providers.

In the event that his clients needed money to pay their premiums, Bielli arranged for his clients to obtain financing from Florida Funding Associates ("FFA"), a Boca Raton based financing company. Pursuant to financing agreements between FFA and Bielli's clients, FFA would send payments to Global and Cross Country and Bielli was then responsible for forwarding these payments to various insurance providers to cover his clients' premiums.

The Government alleges that, rather than forwarding his clients' payments to insurance providers and FFA, Bielli converted those monies for his personal use. According to the Government, Bielli also fraudulently converted payments from FFA that were intended for the insurance providers. The Government contends that many of Bielli's clients were left without insurance coverage when their vehicles were involved in accidents. As a result, several clients allegedly suffered significant financial losses.

### B. Discovery

On June 27, 2008, the Government provided Bielli with various documents pertaining to the twenty-seven mailings and wire transfers referenced in the Indictment. Between August 11, 2008 and September 17, 2008, the Government also provided Bielli with thousands of documents recovered during court-authorized searches of his office on February 25, 2004 and July 28, 2004. The Government also furnished Bielli with bank records and documents obtained from insurance companies, alleged victims, and the State of New York Insurance Department. Bielli was also given a compact disk and ten audio

cassettes containing several of his recorded conversations. In addition, the Government turned over reports from the Federal Bureau of Investigation which contained statements Bielli made during proffer sessions.

## II. DISCUSSION

### A. Bielli's Motion to Dismiss

The mail fraud charges reflected in Counts 9, 11, 12, 14, and 15 stem from checks related to Bielli's dealings with Diamond Truck Leasing Corporation ("Diamond"). Diamond contacted Bielli for the purpose of obtaining insurance coverage for its trucks and the freight it transported and stored. Diamond's coverage with Progressive Casualty Insurance Company was set to lapse on May 12, 2004. In order to ensure that it had a new policy in place as of May 13, 2004, Diamond began making payments to Bielli in February of 2004. The Government alleges that Bielli did not send any of these payments to the new insurer, Liberty Mutual, until June of 2004 after Diamond began to question him about its coverage.

On February 25, 2004, investigators from the Suffolk County District Attorney's Office ("SCDAO") conducted a court-ordered search of Bielli's office. During the search, the investigators seized many of Bielli's files, including six files pertaining to Diamond. Months later, the SCDAO provided the FBI with the documents recovered during the search. However, despite the Government's efforts to locate these documents, it appears they have been lost. Bielli now claims that without access to these documents, he will be deprived of exculpatory evidence that would show he took diligent measures to ensure that Diamond's insurance coverage never lapsed.

Bielli casts this case as one where the Government has failed to meet its constitutional obligation to disclose exculpatory evidence. *See United States v. Coppa*, 267 F.3d 132, 139 (2d Cir.2001) (citing *Brady*, 373 U.S. at 87, 83 S.Ct. 1194) ("The basic rule of *Brady* is that the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment."). However, as the Second Circuit explained in *United States v. Bakhtiar*, 994 F.2d 970 (2d Cir.1993), "a due process claim arising in these circumstances should be treated as a claim for loss or destruction of evidence rather than as a *Brady* claim." *Id.* at 975. In this context, the Government's loss of evidence amounts to a constitutional violation only where the defendant shows that: (1) the Government acted in bad faith in losing the evidence, *Arizona v. Youngblood*, 488 U.S. 51, 56–58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); (2) the evidence had exculpatory value that was apparent before it was lost, *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); and (3) he is "unable to obtain comparable evidence by other reasonably available means," *Id.*

Here, the SCDAO sent the files to the FBI several months after the February 24, 2004 seizure, some six years ago. The Government represents to the Court that it has taken steps to find the missing documents, including contacting the SCDAO directly. On the other hand, Bielli has offered nothing more than the conclusory allegation that the loss of these files reflects bad faith on the part of the Government. The Court certainly encourages the Government to continue its effort to locate these missing files. However, in order to prove a violation of his Due Process rights, Bielli carries the burden to at least offer circumstantial evidence of bad

faith. Under the circumstances in this case, the Court is unwilling to infer that the loss of these files is attributable to anything more than possible negligence on the part of the Government.

Bielli's failure to show that the Government acted in bad faith is fatal to his argument. *See Youngblood,* 488 U.S. at 58, 109 S.Ct. 333 (holding "that unless a criminal defendant can show bad faith on the part of the [Government], failure to preserve potentially useful evidence does not constitute a denial of due process of law."); *United States v. Rastelli,* 870 F.2d 822, 833 (2d Cir.1989) (finding that a defendant's failure to show bad faith on the part of the Government was, in and of itself, fatal to his claim). However, even assuming that Bielli could make this required showing of bad faith and also demonstrate that the files contained exculpatory value that was apparent before they were lost, his argument would still fail because he is able to obtain comparable evidence through reasonably available means.

Bielli contends that, notwithstanding the seizure of the files by the SCDAO, he was able to "re-assemble" and "re-construct" Diamond's insurance application in time to ensure that Diamond had coverage as of May 13, 2004. Bielli's version of the facts casts doubt upon the Government's charge that Bielli intended to defraud Diamond of its payments and only decided to forward the premiums to Liberty Mutual after Diamond questioned him about the situation in June of 2004. If Bielli's account is accurate, then it is likely that whatever documents he used to "re-construct" Diamond's application would carry the same exculpatory value as the missing documents. With reasonable certainty, it is also likely that Liberty Mutual would have documentation concerning Diamond's policy, including information that would con-

firm the date when that policy became effective. Bielli has made no showing that he would be unable to obtain this comparable evidence.

Having failed to show that the Government's loss of these documents rises to the level of a constitutional violation, Bielli's motion to dismiss Counts 9, 11, 12, 14, and 15 is denied.

## B. Bielli's Motion for a Bill of Particulars

▮ Bielli has requested a bill of particulars describing the evidence that the Government will offer at the trial to prove that he defrauded three alleged victims: Aenos Towing, Inc., T.I.A. of New York, Inc., and FFA. "Rule 7(f) . . . permits the defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987). However, it is well-established that "the Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crimes charged, or a preview of the Government's evidence or legal theories." *United States v. Sattar,* 314 F.Supp.2d 279, 318 (S.D.N.Y. 2004) (citing *United States v. Mitlof,* 165 F.Supp.2d 558, 569 (S.D.N.Y.2001)). In fact, "[a] bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres,* 901 F.2d 205, 234 (2d Cir.1990) (quoting *United States v. Feola,* 651

F.Supp. 1068, 1132 (S.D.N.Y.1987), *aff'd,* 875 F.2d 857 (2d Cir.1989)).

■ "In determining whether a bill of particulars is warranted '[t]he important question is whether the information sought is necessary, not whether it is helpful.'" *United States v. Ramos,* No. 06–CR–172, 2009 WL 602977, at *1 (S.D.N.Y. Mar. 3, 2009) (quoting *United States v. Facciolo,* 753 F.Supp. 449, 451 (S.D.N.Y.1990)). Consistent with this principle, courts generally "deny requests for bills of particulars concerning the 'wheres, whens, and with whoms' of the crime." *Id.* (quoting *United States v. Ma,* No. 03–CR–734, 2006 WL 708559, at *14 (S.D.N.Y. Mar. 21, 2006), and *Mitlof,* 165 F.Supp.2d at 569). Ultimately, the decision of whether to grant or deny a request for a bill of particulars is committed to the sound discretion of the district court. *Torres,* 901 F.2d at 234.

■ Here, the Indictment provides a detailed discussion of Bielli's business and describes the alleged scheme to defraud his clients and FFA. The Indictment also provides a helpful table that identifies the 27 mailings and wires that form the basis for the Government's charges. There can be no question that this information satisfies the requirement that an indictment must provide "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R.Crim.P. 7(c). Given the detailed nature of the Indictment and the substantial discovery turned over to Bielli, the Court is satisfied that he has sufficient information about the charges against him. As to Bielli's request to preview the Government's evidence, it is clear that such information goes well beyond the proper scope of a bill of particulars. *See United States v. Guerrero,* 669 F.Supp.2d 417, 426 (S.D.N.Y.2009) (collecting cases and noting that a defendant may not use a request for

a bill of particulars to "compel the government to disclose the manner in which it will prove the charges or preview the government's evidence or legal theory."). Accordingly, Bielli's request for a bill of particulars is denied.

**C. Bielli's Request for Additional Discovery**

Pursuant to Fed.R.Crim.P. 16, Bielli seeks an order directing the Government to provide "information concerning the use of informants, operatives, or witnesses and cooperating individuals who participated in any way or who are material witnesses to any of the events charged in the indictment." Affid. at 21. Bielli also requests the substance of any plea bargains in the case and various forms of information related to persons who have made such agreements with the Government.

■ Generally, Rule 16 "does not provide defendants with the right to obtain a list of the Government's witnesses." *United States v. Falkowitz,* 214 F.Supp.2d 365, 394 (S.D.N.Y.2002). However, a district court retains the discretion to compel pretrial disclosure of the government's witnesses and confidential informants where a defendant offers "a specific showing that disclosure [is] both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case." *United States v. Cannone,* 528 F.2d 296, 300–01 (2d Cir.1975). Here, Bielli has not a made a specific showing of why pretrial disclosure of witnesses and confidential informants is necessary in this case. Accordingly, Bielli's Rule 16 discovery request is denied.

■ Bielli also appears to request an order compelling the Government to produce statements by Government witnesses pursuant to the Jencks Act, 18 U.S.C. § 3500, and impeachment evidence as required by *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104

(1972). It is settled law that a court may not compel the production of Jencks Act materials which are not otherwise discoverable under *Brady* or *Giglio* prior to a Government witness's testimony on direct examination. *See* 18 U.S.C. § 3500; *Coppa,* 267 F.3d at 145–46. The Court is satisfied that the Government is aware of its obligation to turn over *Giglio* material far enough in advance of trial that it can be put to effective use by Bielli. *See Coppa,* 267 F.3d at 146 (holding that constitutional principles dictate that *Brady* and *Giglio* material must be turned over to a defendant in time for the defendant to make effective use of that material). The Court is also satisfied that the Government will adhere to its usual practice of providing Jencks Act materials before their witnesses testify on direct examination in order to avoid a delay in the trial. Accordingly, Bielli's request for the production of *Giglio* and Jencks Act material is denied without prejudice and with leave to renew at a more appropriate time in the future.

### III. CONCLUSION

For the foregoing reasons, Bielli's motions are denied.